344    APPELLATE COURTS OF ILLINOIS.

Starkweather v. Mississippi River Power Co., 231 Ill. App. 344.

## George A. Starkweather, Appellee, v. Mississippi River Power Company, Appellant.

### Gen. No. 7,563.

1. PLEADING—*when demurrer to replication properly carried back to plea.* In an action for damages for the flooding of land from the construction of a dam, defendant's demurrer to the replications to a special plea was properly carried back, on plaintiff's motion to the plea, under the rule that a demurrer searches the whole record and will be carried back to the first substantial defect in the pleading.

2. NAVIGABLE WATERS—*construction of dam under congressional grant no defense to action for damages from flooding.* A special plea to an action for damages for flooding plaintiff's land by the construction of a dam across the Mississippi river, alleging that such dam was constructed pursuant to an act of Congress for the improvement of navigation and to develop water power, presents no matter of defense under the general issue where the act provided that compensation should be made to all persons whose lands were taken, overflowed or damaged by the construction, maintenance or operation of the dam and works appurtenant thereto.

3. SAVING QUESTIONS FOR REVIEW—*failure to specifically object as waiver of inadmissability of evidence.* Defendant's failure to make proper specific objection to questions asked of plaintiff as to his damages, which were erroneous, for assuming matters in dispute and invading the province of the jury, waived the inadmissibility of the questions and answers given thereto.

4. DAMAGES—*instruction omitting construction of dam complained of as proximate cause of overflow erroneous.* In an action for damages from the flooding of plaintiff's land alleged to have resulted from the construction of a dam across the Mississippi river, it was reversible error to give instructions which permitted recovery by plaintiff if the jury found the dam to be a permanent

structure and that plaintiff's land suffered permanent injury from overflow, where there was no question but that the dam was a permanent structure and that the land in question was injured by reason of overflowing in times of high water but the evidence showed that the land was not located on the river bank and was twenty-one miles above the dam and tended to show that it was injured as frequently and to a greater extent before the construction of the dam than after.

Appeal by defendant from the Circuit Court of Hancock county; the Hon. GEORGE C. HILLYER, Judge, presiding. Heard in this court at the April term, 1923. Reversed and remanded. Opinion filed July 10, 1923.

O'HARRA, O'HARRA & O'HARRA, J. O. BOYD and HAZEN I. SAWYER, for appellant.

HERMINGHAUSEN & HERMINGHAUSEN and WILLIAMS & WILLIAMS, for appellee.

MR. PRESIDING JUSTICE HEARD delivered the opinion of the court.

This is an action of case brought by appellee, George A. Starkweather, against appellant, Mississippi River Power Company, to recover alleged damages to certain property which he alleges he owned in Pontoosuc, Illinois, a village located on the banks of the Mississippi river.

The declaration contained one count and alleged the plaintiff, on, to wit, October 18, 1901, was and ever since has been the owner of certain lots in the Town of Pontoosuc, Hancock County, Illinois, upon which was situated a dwelling house and other buildings; that this property lies within a short distance of the Mississippi river; that defendant about July 1, 1913, constructed and now maintains a permanent dam across the Mississippi river from Keokuk, Iowa to Hamilton, Illinois; that defendant by means of said dam raised the level of the water in the river and has held back and accumulated the waters of the river above the dam and thereby wrongfully and illegally

flooded and made marshy part of said Town of Pontoosuc, together with streets and alleys, and thereby destroyed the natural surroundings, situation and environment of plaintiff's real estate and thereby placed plaintiff's premises under an artificial condition; that defendant, by holding back the water of said river, wrongfully and illegally caused the plaintiff's said premises to become flooded and marshy, and did cause the water to stand in the cellar under plaintiff's dwelling house, and caused said dwelling house and other buildings on said real estate to become damp and damaged, and spoiled plaintiff's well, and brought the waters so close to the surface of said real estate that it retarded the free escape of surface water and rendered said dwelling unhealthful and uninhabitable.

To this declaration the power company filed three pleas, first, a plea of the general issue, second, a denial that plaintiff owned the land, and third, a special plea in which it was alleged that where the dam is situated there was originally what was known as the Des Moines rapids; that said rapids prevented the navigation of that portion of the river during times of low water until about 1870 when the government of the United States constructed a canal along the westerly margin of the river for about nine miles immediately above where the said dam is now situated through which the traffic on the river passed; that said canal becoming insufficient for the navigation of the river, the Congress of the United States on February 9, 1905, with a view of improving the navigation of said river and dispensing with said canal, passed an act granting to the Keokuk and Hamilton Water Power Company the right to construct and maintain for the improvement of navigation and development of water power the said dam across the river, in and by which act said company, its successors or assigns, were to construct and turn over to the government of the United States a lock and dry-dock to be operated in

connection with the said dam for the navigation of said river; that the Keokuk and Hamilton Water Power Company in January, 1910, began the construction of said dam and work authorized in said act of Congress and continued the construction of the same until about February 27, 1911, when the said Keokuk and Hamilton Water Power Company assigned all of its right, title and interest, power and authority under said act to the defendant and sold and transferred to the defendant its property and effects; that thereupon the defendant continued the construction of said works in accordance with the said act of Congress; that the same were constructed under the supervision of an engineer officer of the army designated for that purpose; that the same were completed in June, 1913, to the satisfaction of the Secretary of War; that thereupon the United States had the ownership and control of said lock and dry-dock and their appurtenances and accepted the same and has ever since been operating and maintaining the same; that defendant in June, 1913, began to operate its power house located on said dam; that said dam, lock and dry-dock are all connected together, constituting a continuous construction from the Illinois to the Iowa shore of said river; that said lock is used by the United States for the purpose of enabling boats and other river craft to pass up and down the river and over the Des Moines rapids located immediately above the dam, lock and dry-dock; that the said dry-dock is used by the United States Government as a place for the repair of boats and other craft navigating the river and for building vessels therein; that said lock and dry-dock are large and accommodate the largest boats on said river, but this was made possible only by said dam and cannot be used except in connection therewith; that the plaintiff's said lands are not overflowed, but that the waters alleged as affecting plaintiff's lands are but seepage waters from said river above said lock, dry-dock and dam, percolating through the soil for a distance of

1,000 feet inland into and under said lands, and that the damages caused thereby are not direct, but only indirect and inconsequential, for which the defendant is not liable.

Plaintiff filed a *similiter* to said plea of the general issue, and filed a replication to the second plea averring that the plaintiff was the owner of the land described in the declaration, and filed four replications to defendant's third plea.

Defendant filed a *similiter* to plaintiff's replication to defendant's second plea, and filed a general demurrer to said four replications to the third plea. Thereupon plaintiff moved the court to carry back said demurrer to said third plea. The court entered an order carrying back to the third plea the demurrer filed to said replications and sustained the demurrer to the third plea. Defendant stood by its third plea and the case went to trial before a jury on the plea of the general issue and the second plea, raising the issue as to whether or not the plaintiff was in fact the owner of the property, which trial resulted in a judgment for $1,400 in favor of appellee against appellant, from which judgment the appeal was taken.

Appellee contends that the court erred in carrying back to defendant's third plea the demurrer it filed to plaintiff's replications to this third plea and in sustaining the demurrer to said third plea. A demurrer searches the whole record and will be carried back to the first substantial defect in the pleading. *Chaney v. Baker*, 302 Ill. 481; *Rudolph v. Ford County*, 227 Ill. App. 624. This plea presented no matter of proper defense under the general issue. The fact that the work was done under the provisions of an act of Congress was no defense to an invasion of appellee's constitutional rights. This act contains the provision: ''That compensation shall be made by the said Keokuk and Hamilton Water Power Company to

all persons, firms, or corporations whose lands or other property may be taken, overflowed, or otherwise damaged by the construction, maintenance, and operation of the said works in accordance with the laws of the State where such lands or other property may be situated.'' The defendant, Mississippi River Power Company, acquired all the rights and obligations, under this act, of the Keokuk and Hamilton Water Power Company.

In an effort to prove damages, plaintiff was asked three questions, to which objections were overruled and plaintiff was permitted to answer each. The questions were: First, ''what was the reasonable cash market value of your property prior to its being affected by the waters of the dam?'' This question assumes that plaintiff's property was ''affected'' by the waters of the dam, yet this question was in dispute.

Second, ''what was the value of the property immediately after the waters of the dam affected it?''

Third, ''how much was your property damaged by reason of the raising of the waters of the dam?'' These questions not only assume plaintiff's property was damaged, which was one of the controverted questions of fact for the jury to try, but they ask the plaintiff himself to determine a question the jury were impaneled to try. The latter was not shown a proper question under any circumstances, but appellant did not properly raise the question as to the admissibility of this evidence by making proper specific objections upon the trial.

At the request of appellee the court gave to the jury instructions numbers 11 and 12 as follows:

11. ''The court instructs the jury that if they believe from the evidence that the dam in question is a permanent structure, and if they further believe from the evidence that injury to the land of the plaintiff is permanent, that then, in this suit, the plaintiff is entitled to recover such past, present and prospective damages as the jury may believe he has shown himself

entitled to by the evidence, and that in assessing such damages the jury should take into consideration in connection with all of the other evidence in the case, the subsequent results as may be shown by the evidence of the said raise of the water in said Mississippi river.''

12. ''The court instructs the jury that in cases of this kind, damages are assessed and compensation made once for all, such damages covering past, present as well as prospective damages, and that this proceeding will forever bar the plaintiff and all persons holding the premises under him from any future claim for damages, resulting from the building, maintenance and operation of the dam in question.''

Appellant's property which was claimed to be permanently damaged was situated about 420 feet south of the river and about twenty-one miles above the dam in question. There was no question in the case but what the dam was a permanent structure and no question in the case but what the property was injured by reason of overflowing in times of high water, but there was a serious question of fact as to whether the construction and maintenance of the dam was the proximate cause of this overflow, witnesses for appellant testifying that appellee's property was injured as frequently and to a greater extent by water from the river before the dam was built than after.

These instructions omitted the vital controverted question of fact and their giving was reversible error.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*